UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:20-CV-00344-CHL

JAMES L. SHELBY, JR.,                                           **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,[1]                      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the complaint (DN 1) of Plaintiff James L. Shelby, Jr. ("Shelby")
seeking judicial review of the final decision of the Commissioner of Social Security (the
"Commissioner").  *See* 42 U.S.C. § 405(g).  On December 30, 2020, Shelby filed his fact and law
summary (DN 15), and in response, on February 27, 2021, the Commissioner filed his fact and
law summary (DN 18).  The Parties have consented to the jurisdiction of a Magistrate Judge to
enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event
an appeal is filed.  (DN 19.)  Therefore, this matter is ripe for review.

## I.    BACKGROUND

On February 16, 2017, Shelby applied for Supplemental Security Income Benefits ("SSI"),
alleging a disability onset date of July 1, 2015.[2]  (DN  13-3, at PageID # 185.)  Shelby's application
was denied initially on June 28, 2017, (DN 13-4, at PageID # 213), and on October 2, 2017,
Shelby's claim was again denied on reconsideration.  (*Id.*, at PageID # 220.)  An Administrative
Law Judge ("ALJ") conducted a hearing on Shelby's claim on May 9, 2019.  (DN 13-2, at PageID

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security in place of Andrew Saul, she is automatically
substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d).  The Court will direct the Clerk to change
the case caption to reflect the substitution.
[2] Although the protective filing date for Shelby's application is February 16, the record shows that his application
was submitted on March 2, 2017.  (DN 13-5, at PageID # 283.)

# 109–34.)  During the hearing, the ALJ heard testimony by Shelby, who was assisted by a representative, as well as vocational expert Laura McDowell.  (*Id.*)  In a decision dated July 9, 2019, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled, and in doing so, made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 16, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity, degenerative disc disease of the thoracic and lumbar spine, cervical stenosis, post-traumatic stress disorder (PTSD), panic disorder, and anxiety (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally stoop, kneel, crouch, and climb ramps and stairs, and cannot crawl or climb ladders, ropes, or scaffolds. He can do no balancing on narrow, slippery, or erratically moving surfaces or uneven terrain, He can tolerate no exposure to vibrations and hazards, including unprotected heights, dangerous machinery, and no driving. He is able to perform simple, routine work that is object oriented in nature, but can perform no production paced or quota driven work, and can do no cashier type jobs. He can have no interaction with the general public, and occasional interaction with coworkers and supervisors, and changes must be slowly and gradually introduced.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on August 8, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

2

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 16, 2017, the date the application was filed (20 CFR 416.920(g)).

(DN 13-2, at PageID # 93–101.)  On April 6, 2020, the Appeals Council denied Shelby's request for review, at which time the ALJ's decision became the final decision of the Commissioner.  (DN 13-2, at PageID # 59.)  On May 15, 2020, Shelby timely filed this action.  (DN 1.)

## II.   DISCUSSION

### A.  Standard of Review

The Court may review the final decision of the Commissioner; however, the Court may only consider whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" is "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the Court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the

Commissioner's decision can be justified by the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

## B. Five Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520. In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "yes," the claimant is disabled. If the answer is "no," procced to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id.* The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden only shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F. 3d 417, 423 (6th Cir.

2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

## C.  Shelby's Contentions

Shelby contends that the ALJ failed to adequately weigh and assess the opinion evidence concerning his mental impairment in making the RFC determination.[3]  (DN 15-1, at PageID # 1497.)

A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record."  20 C.F.R. § 416.945(a). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record.  *Id.*  Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends.  *Id.* § 416.945(a)(3); 20 C.F.R. § 416.927(c).

The ALJ must consider all medically determinable impairments, which include both severe and nonsevere impairments.  SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); 20 C.F.R. § 416.945(a)(2).  A mental RFC determination often considers similar evidence as the specific Paragraph B findings used to determine impairment severity under step two of the five step process, but the mental RFC determination requires "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments and summarized on the [Psychiatric

---

[3] Shelby does not cite any additional errors concerning the ALJ's RFC determination.  Therefore, any such arguments are waived.  *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

Review Technique Form]." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); 20 C.F.R. § 416.920a.

Further, though SSR 96-8p mandates "a 'function-by-function' evaluation to determine the plaintiff's RFC, the ALJ is not required 'to produce such a detailed statement in writing.'" *Elder v. Comm'r of Soc. Sec.*, No. 2:15-cv-2740, 2016 WL 3946868, at *1, 2016 U.S. Dist. LEXIS 96018, at *17 (S.D. Ohio July 22, 2016) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)) (*report and recommendation adopted* in Elder v. Colvin, No. 2:15-cv-2740, 2016 WL 4527489, 2016 U.S. Dist. LEXIS 116508, at *1 (S.D. Ohio Aug. 30, 2016)). Although all medically determinable impairments must be considered, there is no "heightened articulation requirement to explain how each severe or nonsevere impairment impacts the disability determination." *Id.*; *see Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The plain language of the ALJ's opinion states that he considered all impairments. The ALJ thus considered all evidence as required by the regulation."); *see also Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (finding that "to require a more elaborate articulation of the ALJ's thought processes would not be reasonable" after the ALJ considered all individual impairments and stated that "based upon the medical evidence . . . the claimant retains the ability to perform his former work.").

### a. Opinion Evidence Concerning Shelby's Mental Impairment

#### i. Dr. Coyner

In making a determination of a claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. § 416.945(a).  The source of a medical opinion dictates the process by which the ALJ gives it weight.  *Gayheart*, 710 F.3d at 376.  Generally, the ALJ is required to give more

weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. An examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her.'" *Smith*, 482 F.3d at 875 (quoting 20 C.F.R. § 402.1502). A nonexamining source is a medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give good reasons in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources.") Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Shelby argues that the ALJ incorrectly afforded little weight to the opinion of state agency consultative psychiatric examiner J. Lorilea Coyner ("Dr. Coyner"). (DN 15-1, at PageID # 1497–1508.) Dr. Coyner conducted a consulting evaluation of Shelby on June 13, 2017. (DN 13-7, at PageID # 455.) Based on her evaluation, Dr. Coyner opined that Shelby had: (1) marked

limitations in capacity to understand, remember, and carry out instructions; (2) marked limitations in capacity to tolerate stress and pressure of daily employments; (3) moderate limitations in capacity to sustain attention; and (4) mild limitations in capacity to respond appropriately to supervisors and coworkers. (*Id.*, at PageID # 458.) The ALJ assigned Coyner's opinion little weight, because "the marked limitations are not consistent with mental health treatment notes, improvement with conservative treatment, and numerous activities of daily living." (DN 13-2, at PageID # 98.)

Shelby argues that the ALJ failed to consider all § 416.927(c) factors in assessing Dr. Coyner's opinion. (DN 15-1, at PageID # 1498.) For example, Shelby points out that the ALJ did not explicitly address the fact that Dr. Coyner is an examining source, that her area of expertise is psychology, or that she is a state agency consultive examiner. (*Id.*) Shelby argues that the ALJ's failure to address factors that would lend more credibility to Dr. Coyner's opinion "critically undermines her analysis." (*Id.*)

Shelby further alleges that the reason that ALJ provided for discounting Dr. Coyner's opinion, namely its inconsistency with Shelby's past treatment and ADLs, was not supported by the record. (DN 15-1, at PageID # 1497–1508.) First, Shelby argues that the ALJ's finding that Dr. Coyner's opinion is inconsistent with Shelby's mental health treatment notes was not supported by the record. (*Id.*, at PageID # 1499–1503.) Shelby cites treatment records in the months following Dr. Coyner's evaluation purporting to substantiate the severity of Dr. Coyner's restrictions, such as a June 2017 psychiatric evaluation during which Shelby reported panic attacks, insomnia, and hearing voices and a July 2017 psychiatric evaluation during which Shelby reported panic attacks and depression. (*Id.*, at PageID # 1499–1501.) Shelby also points to historical mental health treatment records in order to corroborate Dr. Coyner's opinion. (*Id.*, at PageID # 1501–

8

1502.)  Second, Shelby argues that the ALJ's finding that Dr. Coyner's opinion is inconsistent with his "conservative treatment" is not supported by the record.  (DN 15-1, at PageID # 1506–07.)  Shelby asserts that "there is no evidence that his mental health providers considered his treatment 'conservative.'"  (*Id.*)  Shelby notes that he had been prescribed antipsychotic medication and was treated with several combinations of medications.  (*Id.*, at PageID # 1506.)  Finally, Shelby argues that the ALJ's finding that Dr. Coyner's opinion is inconsistent with his ADLs is not supported by the record.  (*Id.*, at PageID # 1507–1508.)

Shelby's arguments boil down to an allegation that the ALJ cherry-picked the record. Generally, an ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise be appropriate.  *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D. Ohio, March. 11, 2013) (citations omitted). However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant.  *Coppage v. Berryhill*, No. 1:16-CV-00144-GNS, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017), *report and recommendation adopted*, No. 116CV00144GNSHBB, 2018 WL 305336 (W.D. Ky. Jan. 5, 2018).

Dr. Conyer was an examining source, so the ALJ was only required to determine the weight of her opinion and "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey*, 451 Fed. App'x at 519 (quoting *Diaz*, 55 F.3d at 307).  In the decision, the ALJ considered the treatment records contemporaneous to Dr. Coyner's opinion that Shelby cites.  The ALJ noted that "[i]n June 2017, he reported spontaneous panic attacks spontaneously, difficulty with memory, high anxiety, and command auditory hallucinations" and that during the exam "[h]e had depressed mood, flat affect, and was agitated at times."  (DN 13-2, at PageID # 98.)  However, the ALJ also considered that Shelby "was otherwise alert, active, and open during session, with appropriate eye

contact, appropriate dressing and grooming, and unremarkable attention span and concentration." (*Id.*) The ALJ also discussed the July 2017 examination, noting that "he was highly agitated and anxious . . . [and] [m]edication was increased." (*Id.*) However, the ALJ also noted that Shelby "endorsed 4 losses in the preceding 6 months, and tested positive for methamphetamines." (*Id.*) Additionally, the ALJ noted that "by November 2017, he was discharged from mental health treatment due to noncompliance." (*Id.*) While the ALJ didn't explicitly discuss Shelby's historical medical records, the ALJ thoroughly discussed his medical history for the period after the amended alleged onset date. (*Id.*, at PageID # 97–99.) The ALJ's decision also provided a basis for a reviewing court to understand the ALJ's logic in finding that Dr. Coyner's restrictions are inconsistent with Shelby's "improvement with conservative treatment." (*Id.*, at PageID # 98.) Though he didn't name the specific medications, the ALJ noted that Shelby was medicated for his mental disorders. (*Id.*) The ALJ also referenced a July 2018, a prescription renewal appointment, Shelby reported that his anxiety and panic attacks were well controlled with clonazepam. (*Id.*; DN 13-7, at PageID # 561.) Additionally, the ALJ observed that the record included "little evidence of further treatment and evaluation in the remainder of 2018 and 2019." (*Id.*) The decision sets forth enough information for a reviewer to understand the ALJ's logic, namely that Dr. Coyner's restrictions were not consistent with evidence that Shelby's condition improved through unremarkable medical intervention. Finally, the ALJ's discussion of Shelby's ADLs provides a sufficient basis for her conclusion that the Dr. Coyner's opinion was inconsistent with "numerous activities of daily life." (*Id.*) Specifically, the ALJ noted that Shelby reported living with family, cooking for himself, and shopping. (*Id.*, at PageID # 97.) The ALJ also noted Shelby's hearing testimony that he could grocery shop following a list. (*Id.*) Based on this evidence, it was not

unreasonable for the ALJ to conclude that Dr. Coyner's marked restrictions were inconsistent with some of Shelby's ADLs.

Based on the its review of the record, the Court finds that the ALJ supported the decision to afford Dr. Conyer's opinion little weight with adequate reasons. Although the ALJ did not discuss all evidence, he was not required to do so. "An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). As long as substantial evidence supports the ALJ's decision, the Court must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Here, the Court finds the ALJ's decision supported by substantial evidence and finds no error in the assessment of Dr. Conyer's opinion.

### ii. Dr. Thompson and Dr. Bornstein

The ALJ considered the opinions of state agency psychological consultants Dr. Mary K. Thompson ("Dr. Thompson") and Dr. Michelle Bornstein ("Dr. Bornstein"). (DN 13-2, at PageID # 99.) Dr. Thompson and Dr. Bornstein reviewed the record as of that time, which included Shelby's medical records as of May 2017 in the case of Dr. Thompson and as of July 27, 2017 in the case of Dr. Bornstein. (DN 13-3, at PageID # 181, 201.) Based on their review of these records, they opined that, among other things Shelby was able to understand instructions, perform simple tasks, and occasionally interact with supervisors and the public. (*Id.*) The ALJ assigned this opinion partial weight, "because although it is largely consistent with treatment notes and consultative examination

findings, the claimant's subjective complaints indicate she [sic] is even more limited in her [sic] ability to perform simple routine work than those opinions described."  (DN 13-2, at PageID # 99.)

Shelby argues that the ALJ erred in assigning greater weight to the opinions of the state agency reviewing consultants than she did to the opinion of Dr. Coyner, a state agency examining source.  (DN 15-1, at PageID # 1508.)  Specifically, Shelby suggests that an ALJ can only afford more weight to the opinions of reviewing sources over a treating source if the reviewing sources considered the complete that is before the ALJ.  (*Id.*)  Here, Dr. Thompson and Dr. Bornstein did not review the updated medical records that were entered into the record after they made their source statements.  Based on this, Shelby argues that the ALJ should have felt obligated to update the record with an additional review or consultative examination.  (*Id.*)

As a general matter, the opinion of an examining physician is entitled to less weight than the opinion of a treating physician, and the opinion of a non-examining state agency physician is entitled to the least weight of all.  20 C.F.R. § 416.927(c)(1), (c)(2), and (e); Social Security Ruling 96-6p.  In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

The regulations provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 416.927(e)(2)(i).  Under certain circumstances the opinions of non-examining State agency medical or psychological consultants may be given greater weight than the opinions of treating or examining sources.  Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  When a non-examining source has not reviewed a significant portion of the record, and the ALJ fails to indicate that he has "at least considered [that] fact before giving greater

weight" to the reviewing doctor's opinion, the decision cannot stand.  *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

Here, the ALJ did not assign any of the medical opinions controlling weight.  (*See* DN 13-2, at PageID # 98–99.)  The ALJ explained why she assigned partial weight to Dr. Thompson's and Dr. Bornstein's opinion.  (*Id.*, at PageID # 99.)  Although neither of these individuals had access to the complete record when they created their source statements, the ALJ was still permitted to assign their opinions partial weight because there is "some indication that the ALJ at least considered" the updated medical records.  *Blakley*, 581 F.3d at 409.  Indeed, the ALJ's decision cited extensively to the latter records and summarized the medical evidence therein.  (DN 13-2, at PageID # 97–99.)  The ALJ properly analyzed the available evidence in the record, Shelby's reported activities of daily living, and his conservative treatment regimen.  This analysis caused the ALJ to make an RFC finding that was more restrictive than the RFC recommended by the state agency reviewing consultants that Shelby challenges.  The ALJ was not required to obtain additional medical source statements.  The ALJ is only required to request additional evidence when she lacks enough evidence to make a determination.  ALJs have broad discretion to determine whether further evidence is necessary.  *See* 20 C.F.R. § 416.917.  This does not remove the claimant's burden to provide sufficient medical evident to support her claim.  *See Jones v. Comm'r of Soc Sec.*, 336 F. 3d 469, 474 (6th Cir. 2003).  The Court notes that Shelby was given an opportunity to review the record before the hearing, and when asked if the record was complete, Shelby's representative said that it was.  (DN 13-2, at PageID # 110.)  Accordingly, the Court finds the ALJ's decision supported by substantial evidence and finds no error in the assessment of Dr. Thompson's and Dr. Bornstein's opinions.

**III.     ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the

Commissioner is **AFFIRMED**.  A final judgment will be entered separately.

IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting

Commissioner of Social Security, is substituted as the Defendant in place of Andrew Saul, and the

Clerk is directed to change the case caption to reflect the substitution.

Colin H Lindsay, Magistrate Judge

United States District Court

September 30, 2021

cc:  Counsel of record

14